# BENJAMIN F. DUVALL AND THOS. WELLS *vs.* JOHN MILLER AND ROBERT LEE MANNING.

*Elections and Voters—Cross-mark on Ballots Must Be Wholly Within the Square—Ballots Not Folded as Directed by Statute to be Rejected—Ballots Containing Votes for too Many Candidates Invalid—Sufficiency of Petition to Contest Election.*

Code, Art. 33, sec. 49–51, as amended by the Act of 1901, ch. 2, provide for the form and arrangement of the ballot to be used at elections and prescribe that ballots shall be so printed as to give to each voter a clear opportunity to designate by a cross (X) in a square at the right of the name of each candidate his choice of candidates ; and that the voter shall prepare his ballot by marking with an indelible pencil after the name of every person for whom he intends to vote and to the right thereof in the blank space provided therefor a cross—for example (X). Section 66 provides that the Judges of Election must reject all ballots upon which there shall be any mark other than the cross-mark in a square opposite to the names of the candidates. *Held,* that the voter must place his cross-mark wholly within the square, and that if the mark be partly without the square no discretion is given to the Judges of Election to determine that it is substantially written within the square or to ascertain the intention of the voter otherwise than by his exact compliance with the provisions of the statute, and since these provisions are mandatory, a ballot upon which the cross-mark of the voter extends beyond the square must be rejected.

Section 52 of said Article provides that the ballots shall be so folded in marked creases that no part of the marks or printing thereon except that upon the back and outside shall be visible, and that the voter shall fold his ballot without displaying the marks thereon and in the same way it was folded when received by him so that the initials of the judge from whom he received it and the name and number on the coupon but nothing else thereon may be seen. Section 66 provides that the Judges of Election must reject all ballots deceitfully folded together. *Held,* that ballots not folded in the same way they were when received by the voters are illegally and therefore deceitfully folded and must be rejected in the count, although so folded as not to display the marks thereon.

Under the clear language of Section 66 of said Article, ballots on which voters have marked more names than there were persons to be elected to certain offices must be rejected altogether and cannot be counted in part for other offices.

A petition alleged that although another person was returned as having

been elected to a certain office yet the petitioner had in fact received a plurality of the lawful ballots cast at the election for that office; that between five hundred and a thousand legal ballots cast for the petitioner were not counted for him because the Judges of Election rejected the same for certain designated but insufficient reasons, and that if said ballots had been counted for petitioner the result would have been different. *Held*, that the averments of the petition are sufficiently definite and precise to put in issue the accuracy of the return of the Election Judges.

Appeal from the Circuit Court for Prince George's County (MERRICK, J.)

The petition in this case charged that the result of the election, as certified by the Judges, was owing to the following irregularities, errors and wrongful acts of the Judges of Election at said election, in not receiving and counting legal ballots offered and cast thereat for each of the petitioners, viz:

4A. A large number of legal ballots were wrongfully rejected by said Judges of Election, and not counted by them for either of your petitioners whereas they should have been counted for each of them, because a portion of the cross-mark of the voter in one or more of the spaces provided on the official ballot for the same, slightly extended beyond the lines bounding said space or spaces, without, however, in any manner furnishing a clue to the identity of the voter voting the same or any doubt as to his intention and by reason thereof between 200 and 400 legal ballots were not counted as they should have been for either of your petitioners, being sufficient in number to change the result of the election as to said office of County Commissioner.

B. A large number of legal ballots were wrongfully rejected by said Judges of Election and not counted by them for either of your petitioners, whereas they should have been counted for each of them, because said ballots after being marked by the voter, to whom they had been respectively given by said Judges of Election, were returned to said Judges of Election by said voter without being folded in the same way it was folded when received by him, but was so folded as not to display the marks thereon, or the name or names of the candi-

dates, voted for, the back of said ballots being folded inward, and a blank back exposed to view: and by reason thereof between 100 and 200 legal ballots were not counted as they should have been for either of your petitioners being sufficient in number to change the result of the election as to said office of County Commissioner.

C. A large number of legal ballots were wrongfully rejected by said Judges of Election and not counted by them for either of your petitioners, whereas they should have been counted for each of them, because the voters thereof had respectively marked more names thereon than there were persons to be elected to an office voted for, which office, was other than that of County Commissioner aforesaid, and by reason thereof between 100 and 200 legal ballots were not counted, as they should have been for either of your petitioners, being sufficient in number, to change the result of the election as to said office of County Commissioner.

F. Which errors, irregularities and wrongful acts occurred in every election district and precinct in said county, and by reason thereof between five hundred and one thousand legal ballots cast for each of your petitioners for said office, were rejected and not counted for either of them, being sufficient in number to change the result of the election as certified as aforesaid, and elect to said office each of your petitioners.

G. And said errors and wrongful acts make a count of said rejected ballots necessary in order to ascertain the true result of said election so far as the same relates to said office of County Commissioner.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*F. Snowden Hill* and *Edgar H. Gans* (with whom was *Charles J. Bonaparte* on the brief), for the appellants.

The construction adopted by the Circuit Court is not warranted by the words of the statute. "The voter shall * * * prepare his ballot by marking with an indelible pencil after the

name of every person or persons for whom he intends to vote and to the right thereof in the blank space provided therefor, a cross," etc.; and the rules of interpretation recognized by this Court and those of the other States of the Union do not give said words such effect.   Note in 47 L. R. A. 812; *Talcott* v. *Philbrick*, 59 Conn. 485; *Parine* v. *Wineberg*, 130 Ind. 564; *Bechtel* v. *Albin*, 134 Ind. 200.

The Judge below not only decided that the statute required the cross-mark to be *wholly within the square*, and that the ballots under consideration were properly rejected because they were not so marked, but also decided that they were invalidated by the slight and innocent extension of a line or lines of the cross beyond the square because the same plainly violated the provision : "If there shall be any mark on the ballot other than the cross-mark in a square opposite to the name of a candidate   *   *   *   his (the voter's) ballot shall not be counted."   The appellants insist that this construction is entirely too narrow, and that the spirit and not the letter of the law should prevail.   *Dennis* v. *Coughlin*, 22 Nev. 456; *Voorhees* v. *Arnold*, 108 Iowa, 77; *Whittam* v. *Zahorick*, 91 Iowa, 38; *Parker* v. *Orr*, 158 Ill. 609.

In *Borders* v. *Williams*, 155 Ind. 43, the Court said: " It should be borne in mind, in passing upon the validity of a ballot, when the questionable mark is the prescribed cross, and the same touches or is within a circle or square, that many voters are unskilled in the use of the pencil, that some degree of nervousness frequently attends the preparation of the ballot; that the light in the booth is often poor, the vision of many impaired, and that in passing from one list of candidates to another, in an imperfect light or vision, it reasonably may, and doubtless does sometimes, happen that the voter, by honest mistake, places his mark upon a line or square different from the one intended, and when this is shown by the general appearance of the ballot, and the ballot is properly executed in all other respects, it should be counted for all the other candidates not affected by the mistake.   It is purity of election and a free and honest expression of the voter's will that

is aimed at, and a substantial compliance with the law in the execution of the ballot will suffice if the general appearance of the ballot is such as clearly to indicate an honest effort by the voter to comply with the law and his choice of candidates may be clearly ascertained."

Not a statute of any State has· been found which says, in terms, that the cross-mark shall be *wholly within the square*, and most of these statutes use the language of the Maryland Act—" in the square." And not a decision has been found sustaining the construction of our Act adopted by the Court below except the cases of *Oglesby* v. *Sigman*, 58 Miss. 502, and *Steele* v. *Calhoun*, 61 Miss. 556. These cases were decided about 1884, and have not been followed by any Courts. Reference is also made to the following cases bearing on the subject: *Curran* v. *Clayton*, 86 Me. 42; *Pennington* v. *Hare*, 60 Minn. 146; *Taylor* v. *Bleakly*, 55 Kans. 1; *Howser* v. *Pepper*, 8 N. Dak. 484; *Houston* v. *Steele*, 98 Ky. 607; *People* v. *Sansalito*, 106 Cal. 500; *Sweeny* v. *Hine*, 23 Nev. 409; *Van Winkle* v. *Crabbree*, 34 Ore. 462; *Kelso* v. *Wright*, 110 Iowa, 560; *Vallier* v. *Brakke*, 7 S. Dak. 345; *Hall* v. *Shoeneike*, 128 Mo. 661; *State* v. *Sadler*, Nev. 1899, 58 Pac. R. 284; *Tornbaugh* v. *Grogg*, 156 Ind. 363.

2. The ballots mentioned in paragraph 4B of the petition were *legal* ballots " *offered and cast* " at said election (see paragraph 3) and should have been counted. While the Judges · of Election might have declined to allow the ballots to be cast until the respective voters had properly folded them, having received them and deposited them in the ballot boxes there is no warrant of law for not counting them. The sentence in sec. 66 of said Act: " They shall reject any ballots which are deceitfully folded together " can have no application because the description of the ballots under consideration does not show that they were deceitfully folded together.

The appellant insists with regard to these ballots that they were legal ballots and should have been counted. The law, while saying that they shall not be deposited in the ballot-box, does not say that, if deposited, they shall not be counted,

and if it said so it would be unconstitutional and void.    In *O' Connell* v. *Matthews*, 177 Mass. 521, HOLMES, C. J., said : " If official ballots, they were not forbidden to be counted by the words of the statute.    It is true that section 230 prohibits ballots like these being deposited in the box, but this is not equivalent to prohibiting their being counted in case they are deposited without remark.    *If not allowed to be deposited the voter cold get a perfect ballot and cast his vote.    If allowed to be deposited and not counted, the voter is disfranchised.    The latter result is not to be admitted without very clear words, and such words would raise a constitutional question which we do not decide."*    See also *Hehl* v. *Ginon*, 155 Mo. 84.

3. The ballots described in paragraph 4C of the petition were rejected and their rejection upheld as proper by the Circuit Court, because the voters had marked more names on each of them than there were persons to be elected to some other office than that of County Commissioner ; in other words, the votes of these voters expressing properly their judgment as to the best persons to fill the offices of County Commissioners, were not counted because they had voted ineffectually as to certain other offices.    Was this justified by the law ?    On this point the opinion of the Circuit Court is very brief.    The learned Judge says merely :    " *The 3rd objection* refers to marking more names than there are persons to be elected to any office.    I think the law is too plain for argument.    Sec. 66 of Election Law says, ' if the voter has marked *more names* than there are persons to be elected to an office, *his ballot* shall not be counted.'    The old law said :    ' Should not be counted for *that office.*'    This is a change, requiring the rejection of the entire ballot.    I think these ballots were rightly rejected. "

Sec. 13 of chap. 97 of the Laws of 1805, codified as Art. 35, sec. 26, of the Code of 1860, was as follows: "If upon opening any of the said ballots, there is found any more names written or printed on any of them than there ought to be, or if any two or more of such ballots or papers be deceitfully folded together, or if the purpose for which the vote is given is

not plainly designated thereon, such ballot shall be rejected and not counted."

This became, without change, Art. 33, sec. 65, of the Code of 1888; so that, up to the time when the Australian ballot system was introduced into Maryland by the law of 1890, that is to say, during a period of eighty-five years, the law provided expressly that—"if upon opening any of the said ballots there be found any more names written or printed on any of them han there ought to be  *  *  *  *  *such ballots shall be rejected and not counted.*"

Nevertheless, by an absolutely uniform and unbroken custom on the part of the officers of elections, and of which this Court will take judicial cognizance, ballots of the character described had been "rejected and not counted" for the office *only* as to which they contained more names than there ought to be. This unanimous and unquestioned practical interpretation of the meaning of this legislative enactment during three generations is decisive in determining the true construction of the law in question.

We may then safely conclude that it was the settled law of this State prior to 1890 that the names of too many candidates on a ballot required its rejection, but only for the office to fill which such candidates were named.

Bearing this fact in mind, we can see that sec. 158 of Art. 33 of the Code, as enacted by chap. 538 of the Laws of 1890, was really intended to be declaratory of the existing law as construed by settled official practice, with the modifications rendered necessary by the introduction of the Australian ballot. This section, so far as relevant, reads as follows : "If the voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office; no ballot without the official endorsement and the initials of one of the ballot clerks shall be allowed to be deposited in the ballot-box or counted."

Marking more names on the official ballot was obviously equivalent to having more names than there ought to be on a

ballot voted under the previous system, and the law now declared what it had always been construed by the election officers to mean, namely, that such a ballot should not be counted "for such office." On the other hand, a ballot, without the official endorsement and initials of one of the ballot clerks and two or more ballots "deceitfully folded together" (the old "puddin'" tickets), were, as under the old law, to be "rejected and not counted" *at all.* In the language of the Court of Appeals of Indiana: "This amendment was intended, we think, to make certain that which prior to its passage, was left, in some measure, to construction, but it only makes certain what was intended by the Legislature when it passed the original section." *Bechtel* v. *Albin,* 134 Ind. 200.

Chap. 202 of the Laws of 1896, renewed the prohibition against ballots deceitfully folded together, without, however, requiring that two or more such ballots should be so folded, to make the provisions effective, and, in other respects, it simply repeats the language of the Law of 1890, Art. 33, sec. 66.

So far as it related to the marking of more names than there are candidates to receive votes on the official ballot, it was identical with the previous Act, and, like it, "only makes certain that which was intended by the Legislature when it passed the original section" of the old law of 1805. In asking, therefore, that the Court construe the provision of the law of 1901, which requires that such ballots "shall not be counted" (without *saying* whether it means "counted for that office" or "counted at all"), as meaning that they shall not be counted for the office in question, the appellants ask only that the Court give to those words the same meaning which had been ascribed to them by an unbroken official practice of at least eighty-five years, and which had been in effect declared to be their true sense by the statutes of 1890 and 1896. The omission of the words "for such office," regarded by the learned Judge below as decisive of the present question, surely ceases to have any significance when we remember that these words were omitted in the old law, and

yet the construction for which we contend was as firmly established under it as under the statutes of 1890 and 1896.

*John Prentiss Poe* (with whom were *James C. Rogers* and *Joseph S. Wilson* on the brief), for the appellees.

All that is charged in the petition is that certain ballots, simply called "*legal ballots*," of three different kinds mentioned in these clauses A, B, C, and cast for the appellants, were irregularly, erroneously and wrongfully rejected.

It is not even alleged that these so-called "legal ballots" were "in all respects duly marked according to law." We maintain, that under the rule declared in *Leonard* v. *Woolford,* 91 Md. 632–638, the averments of the petition are not sufficiently definite to justify the granting of the relief prayed, viz., an order for the opening of the ballot-boxes in all of the election precincts of the county and a recount of the ballots in question—and that our demurrer was, therefore, properly sustained.

It is not supposed that it will be seriously contended tha the Court below erred in dealing with the 2nd and 3rd alleged errors, and there is no occasion therefore as to these to do more than refer to the reasoning of the Court below. The first point is the one which it is understood will be mainly, if not exclusively, urged by the appellant. This question has: been repeatedly considered by the Courts, and an examination of the decided cases will show, it is believed, that the Court: below was right. 10 *Am. & Eng. Ency.* (2nd ed.), 717–721. In the notes to 47 L. R. A. 806, will be found a full collection of all the decisions. The result may be thus stated: 1st. The weight of authority is that the provisions in the statute as. to the mode of marking the ballot are treated as mandatory and not directory merely. 2nd. That the question now under consideration depends upon the terms of the particular statute, and that where these indicate that in marking the ballot the voter must make his mark with a specified instrument in a prescribed place and in a designated way, failure to so mark

the ballot will vitiate it and require its rejection by the election officials.

Here, in aid of the cogent reasoning of JUDGE MERRICK, it must be borne in mind that section 66 as amended by the Act of 1901, chapter 2, repeals the pre-existing provisions which left to the Judges of Election a certain discretion in determining the intention of the voter.

Under the existing law this intention must be indicated, and can only be indicated: *A.* By his making a cross-mark. *B. Within* the square. A mark not a cross-mark, even though within the square, is not sufficient, and so a cross-mark not within the square is not sufficient. The judges are not left free to guess at the voter's intention, but this intention can only be shown in the precise and definite mode prescribed by the statute.

*As to the Third Alleged Mistake of the Judges of Election.* The appellants in their brief meet the argument on this point founded on the deliberate change made by the Act of 1901 in the language of section 66 by striking out the words *"that office"* in section 66 as contained in the pre-existing section 66, by relying on a supposed contemporaneous construction of the old Act of 1805, chap. 97, sec. 13, of which they ask the Court to take judicial notice. There never was and never could have been any such asserted erroneous construction of that old Act. The language of the Act was too plain and the old mode of voting made such a construction and practice next to impossible. The words *"that office"* were stricken out of section 66 in the re-enactment with amendments of that section in the Act of 1901 for the express purpose of making absolutely and wholly void any and all ballots which contained more cross-marks than there were offices to be filled. The change was made to prevent a voter by this simple and obvious trick, agreed on beforehand, of proving how he had voted. And the meaning and intent are too plain to be misunderstood.

PAGE, J., delivered the opinion of the Court.

The questions in this case arise upon the rulings of the Cir-

cuit Court for Prince George's County, on demurrer to the petition filed by the appellants. After stating the qualifications of each of the appellants to be a County Commissioner, and that at the general election held on the 5th of November last they were candidates for the said office against the appellees, the appellants allege in their petition that the appellees were certified as elected by the election officers but that notwithstanding said certificate and return, the petitioners in fact received a plurality of all lawful ballots cast at said election for the legally qualified candidates for said office, and were duly elected over all competitors to said office of County Commissioner; and each of the petitioners charged " that the result certified as aforesaid, was owing to the following irregularities, errrors and wrongful acts of the Judges of Election at said election, in not receiving and counting *legal* ballots offered and cast thereat for each of your petitioners." Then follow three specifications of error, which to avoid repetition will be fully stated hereafter. The petition then proceeds to allege that such "errors, irregularities and wrongful acts," occurred in every election district and precinct in the county, so that between 500 and 1,000 " *legal ballots* " cast for the appellants were rejected and not counted, and that the same were sufficient in number to elect the appellants; that a count of said ballots was necessary to ascertain the true result of the election, and that notice of intention to contest the election was served on each of the appellees by the appellants within ten days after the announcement of the result of the election. The prayer of the petition is, 1st: That the Court assume jurisdiction of their contest. 2nd: That the appellees be required to answer. 3rd: That the said rejected and uncounted ballots be inspected and counted; and 4th, such other and general relief as the case may require.

The appellees demurred, and assigned as reasons therefor. 1st. That the allegations of the petition are too vague, uncertain and indefinite, and 2nd. That the case made by the petition is insufficient in law. The Court sustained the demurrer and the appellants appealed.

As to the first ground of demurrer.   In *Leonard* v. *Wool-ford*, 91 Md. 626, this Court has laid down the degree of cer-tainty required in a petition of this kind.   It was held in that case that it was not the same as in "pleadings between par-ties to a suit at law," but that the averments would be "suffi-ciently definite and precise if they put in issue the fairness and accuracy of the return of the board of canvassers." And in *Mann* v. *Cassidy*, 1 Brewster, 27, cited in *Leonard* v. *Wool-ford*, *supra*, it was further said that "all that the Court can re-quire is, that it shall state in an intelligent manner, and with due precision, such facts as, if sustained by proof, would show that there has been an undue election and false return."

Now it is set forth in this petition that between five hun-dred and one thousand legal ballots cast for the petitioners, were not counted for them ; and if they had been, the result of the election would have been changed.   It is contended that it was error to have denominated them as "legal ballots," because that was to aver what was only matter of law.   But conceding this, it does not follow that the element of fact con-tained in the averment would be in consequence eliminated. There would still remain the statement, the allegation of fact, that so many ballots were not counted.   The demurrer would concede this fact, but not that they were "legal" ballots.   On demurrer only such matters of fact as are well pleaded will be taken to be true.

The naked allegation, (that so many ballots were not counted), would not be sufficient to support the petition ; be-cause if it stood alone, there would be no statement of fact from which it might appear that the ballots were legal ballots. It is only on account of the rejection of legal ballots that the appellants could have the right to complain.   There are other averments however in the petition which must be considered in this connection.   The reasons why these ballots were re-jected are also set forth.   It is charged that it was because of the several matters of fact, contained in and particularly set forth in Clauses A, B and C of paragraph four of the peti-tion.   If the facts set forth in these clauses are true, and are

not sufficient in law to justify the action of the judges in rejecting the ballots, then the appellants have made out a case, upon which they would be entitled to the relief prayed for in the petition. The averments of the petition are therefore, in our opinion sufficiently definite and precise, to put in issue the fairness and accuracy of the returns of the Judges of Election.

1. The next question presented by the demurrer is, do the facts alleged in Clauses A, B and C of paragraph 4, show that the judges committed an error in rejecting the ballots. Clause A, is, in effect, that between two hundred and four hundred ballots were wrongfully rejected, "because a portion of the cross-mark of the voter in one or more of the spaces provided on the official ballot for the same, *slightly extended* beyond the lines bounding said space or spaces, without, however in any manner furnishing a clue to the identity of the voter voting the same or any doubt as to his intentton."

It was contended at the argument on one side, and denied on the other, that, by a proper interpretation of the statute, to constitute a legal ballot, the whole of the cross-mark must be *within* the space provided for the same on the official ballot; and that the ballot will be invalid and should not be counted if any portion of the cross extended beyond the lines of that space.

The statutes applicable are found among the several sections of Art. 33, of the Code of Public General Laws, as amended by the Act of 1896, chap. 202, and by the Act of 1901, chap. 2. Sec. 49 makes it the duty of the supervisors to prepare the ballot, directs what each shall contain, and makes all other ballots void and not to be cast or counted. Sec. 50 provides what the form and arrangement of the ballot shall be, and among other things prescribes, that, "ballots shall be so printed as to give to each voter a clear opportunity to designate by a cross (X) in a square at the right of the name of each candidate." Sec. 61 provides how it shall be voted; the voter "shall prepare his ballot by marking with an indelible pencil after the name of every person or persons for whom he intends to vote, and to the right thereof, *in the*

*blank space provided therefor, a cross*—for example, (X)." The "blank space" referred to in this section, is therefore the "square" mentioned in sec. 50. By sec. 66, the judges must reject, all ballots "deceitfully folded together," all which do not have endorsed thereon the name or initials of the judge who held the ballots; and "if the voter has marked more names than there are persons to be elected to an office, or if there shall be any mark on the ballot, other than the cross-mark in a square opposite to the name or names of any candidate written by the voter on the ballot as provided in sec. 49, his ballot shall not be counted." From this statement of the law, it must appear, and we do not understand that it was controverted in the argument, that if effect is to be given to the words of the statute according to their plain import, all ballots must have the cross-mark wholly in the square. Every provision of the Act touching the matter seems to keep this requirement in view. The ballot must be prepared with *a square*, printed to the right of each candidate or question to be voted for, so that each voter shall have "a clear opportunity" to designate his choice, by "a cross *in a* square;" when the voter prepares his ballot he shall mark it *"in the blank space provided;"* and when the count is made, no ballot shall be counted that contains any other mark other than the cross *in* the proper square. It would seem to be clear, that if the cross be not wholly within the square, it is then not "in" it, but only partly in and partly outside. There are no words in the Article, other than those quoted, that either directly or by construction can be held to import that the presence of part only of the cross in the square would meet the requirements of the statute. Unless by a forced construction, or by reading something into the statute that is not now there, can it be held that if the voter's choice be capable of ascertainment from what he has actually done, his ballot shall be counted if he has acted honestly and made a *bona fide* attempt to follow the provisions of the law. That rule has been adopted in some cases elsewhere, as will be noticed hereafter, but in all such cases there was some positive provision of the

law, to warrant its adoption. Here there is nothing to qualify the words used in the provisions we have cited. These words are precise, clear and unambiguous, and unless, as we have said, something else can be read into the statute that does not now appear in it, it is difficult to determine that the Legislature meant anything but what it has plainly expressed. If we are correct in this, there is no room left for construction. Courts cannot even to give effect "to what they may suppose to be the intention of the Legislatuare, put upon a provision of a statute a construction not supported by the words, even although the consequences should be to defeat the object of the Act." *Maxwell, &c.,* v. *State,* 40 Md. 293.

But it is contended on the part of the appellants that, if the provisions in respect to marking the ballot be interpreted in connection with other provisions of the Article, at the same time keeping in view the objects and spirit of the legislation, and observing well recognized rules of interpretation applicable in such cases, it will not be necessary nor improper to hold that they require no more than that the cross shall be *substantially* in the square. Or in other words that though it may appear that the cross is only partly in the square, yet if it does not appear that the voter has been actuated by improper motives, but has used an honest effort to comply with the provisions of the law, and has performed the act of marking irregularly only by reason of his blundering or ignorance or innocent error, and the voters choice can be fairly ascertained, then the ballot should be counted if the cross is substantially within the square. This contention involves an inquiry into the objects and purposes of the legislation and the general scheme that pervades the system, which the Legislature has provided for the regulation of the elective franchise. It seems to be clear that the fundamental principles that differentiate the present system from that which preceded it is the establishment and maintenance of the secrecy of the ballot; whereby the voter shall be compelled to express his choice in such a manner that it is impossible for it to be known for whom he has voted. The objects underlying the Act are

to preserve the purity of the ballot, and to protect the voter in the free and untrammelled exercise of his right to vote according to the suggestions of his preferences or his reason, without interference by bribery or intimidation or other improper means. To these ends the statute provides that the ballot shall be prepared by the public authorities, in a form particularly prescribed; it requires that the voter shall cast it in the manner also particularly described and that his choice shall be determined by certain markings upon the ballot. But little if anything is left for the decision of the judges in respect of determining the voter's intention. It is apparent we think that the statute contemplates that the marking of the ballot itself shall be the index of the voter's intention. There are no provisions like those to be found in the statutes of some of the other States of the Union. While the statutes in some of the States require the voter to express his choice in the manner designated by the law, yet they also permit the Judges of Election to examine the ballot and count it, whenever by any means it can be determined what the intention of the voter is; and in such States the provisions as to the marking the ballot have very properly been regarded as directory only. In *Parker* v. *Orr*, 158 Ind. 614, the Indiana statute required that the voter should mark his ballot with a cross in the appropriate space or margin; but there was also another provision which plainly meant, the Court said, "that if the voter's choice could be ascertained from his ballot, it shall be counted if it could be done consistently with other provisions of the object of the Act." It was therefore held in that case that "the voter's intention must be manifested by a cross, *substantially* in the place designated, which the Judges of Election can see was an honest attempt to follow the directions of the law." We have cited this case among many others of the same class to illustrate more clearly our meaning in the case at bar. We do not mean to express any approval or disapproval of what was there said, except that the decision of the Indiana Court was probably a fair construction of a statute which, although it required that the voter shall prepare and

cast his ballot in the mode particularly described, yet contained provisions that permitted the Election Judges to count an irregularly marked ballot whenever the choice of the voter could be fairly ascertained.   Our statute however does not contain any provision that authorizes the election officials to attempt to ascertain the intention of the voter in any other manner than by the application to the ballot of the directions contained in the law.   Section 66 as it read under the Act of 1896 contained a clause providing that "if for any reason, it is impossible to determine the voters choice for any office to be filled, his ballot shall not be counted for that office."   This clearly indicated that the judges had power to make inquiries as to the voters intention, though his ballot might not in all espects conform strictly to the requirements of the law. Under such a provision we might have very easily considered this case as within the rulings of *Parker* v. *Orr*, 158 Ind. 614; so far at least as to hold that if the cross were "substantially" within the square, and the irregularity was due only to blundering or ignorance, the ballot should be counted, if the intention could be fairly ascertained.   Such a construction would be only carrying out a rule that has been widely adopted, that all reasonable intendments must be made in favor of the enfranchisement of the voter.   Sec. 47, L. R. A. 812, where will be found the citation of numerous authorities.

But the provision that permits the election judges to attempt to ascertain the intention of the voter otherwise than by a compliance with the strict requirements as to the marking the ballot, was left out of the law by the Act of 1901, ch. 2.   The clause in sec. 61 of the Act of 1896, wherein it was declared that the provision as to the instrument for marking the ballot is directory, is now also omitted.   That clause, as long as it formed part of the statute, it is evident would indicate without regard to any other reason therefor, that the Legislature intended that all the provisions as to marking the ballot should be mandatory, except as concerned the instrument used for the purpose of marking ; and by the repeal of the clause, it would seem to follow that it was intended that

the use of the indelible pencil should also be taken as mandatory. So that as the law now stands the provisions for marking the ballot must be regarded, not only in the spirit, but by the letter of the law, as mandatory and obligatory alike upon voters and judges. But this is not all. By sec. 6, sub-section 66 of Act of 1901, ch. 2, (being sec. 66 of Art. 33), as has been stated, all discretion as to judging of the voter's choice when the law has not been observed is taken away. They are now required by that section to *"reject"* all ballots deceitfully folded, or without the initials of the judge, and all ballots on which too many names are marked ; and all upon which "there shall be any mark on the ballot other than the cross-mark in the square opposite to the name of a candidate, or other than the name or names of any candidate written by the voter on the ballot as provided in section 49," *"shall not be counted."* As to these ballots the judges are granted no discretion. They must be rejected. They include all kinds of ballots except those that strictly conform to the provisions of the law ; and with these, judges cannot do anything but reject. All ballots that contain any mark but those authorized by law to be upon them shall be rejected and not counted.

Thus it appears that the Legislature must have intended a strict observance of the essential requirements of the law. For errors, accidents or mistake of the voter, there was provided a remedy, (sec. 63); the voter may return his spoiled ballot, and receive another. A clear and definite rule was laid down by which the voter's intention could be indicated, and that rule must be observed. As was said in *Bechtel* v. *Albin*, 134 Ind. 203, "the voter has no greater right to stamp," (or mark) "his ballot in a manner different from that prescribed, than he has to decline to go in the booth to stamp it." Under the Act of 1901, the intention of the voter must be made to appear by the means prescribed by the law, and cannot depend upon the ability of the judges otherwise to ascertain the voter's choice. It is the expression of his choice in the manner provided by statute and in no other way. The

whole scope of the law shows that this was the purpose. But little is left to the discretion of the officers of election. All the details of the voting, the preparation of the ballots, and the time, place and manner of supplying them to the voter, the several matters and things the voter shall do, the mode of placing them in the box, their counting and rejection, and the final disposition of them, are carefully and minutely pre-scribed. There is nothing in the Act about distinguishing marks, except that no other than the lawfully prescribed marks shall be on the ballot, sec. 66. It is possible that the Legis-lature deemed it safer that the ballots should be protected by fixed rules than by permitting the judges to determine in any case whether a defective ballot was yet good enough to be counted. For instance, if the contention of the appellants be accepted, what rule would or could be laid down for the guid-ance of the Judges of Election ? If part of the cross can be outside, how much or what part must be within the space ? How are "distinguishing" marks to be detected ? Is the judge at one poll to adopt one rule, and another judge a dif-ferent ; so that a ballot shall be rejected here, and another ex-actly similar be counted elsewhere ? Shall we decide there-fore that a fixed system of voting is less conducive to the en-franchisement of the voter than one where discretion is en-trusted to officials, which may be exercised differently through-out the State, with the result that a more stringent rule shall apply in some places than in others ? It is not for this Court to make this decision. It is quite enough for us to say that in enacting the Act of 1901, the Legislature has so deter-mined. That Act seems to indicate clearly that the Legisla-ture contemplated that the intention of the voter should be ascertained by the application to the ballot of the directions contained in the statute. None of these directions are more essential to the system established by the statute than those which direct the manner in which the voter shall express his choice. They are therefore mandatory and are binding upon all. *Hope* v. *Flentge*, 47 L. R. A. 818; s. c. 140 Mo. 390; *Curran* v. *Clayton*, 86 Me. 42; *Taylor* v. *Bleakley*, 55 Kans. 1;

*Sego* v. *Stoddard*, 136 Ind. 297; *Oatman* v. *Fox*, 114 Mich. 652.

We are of the opinion therefore that the statute requires the cross-mark to be within the square, and there is nothing either in the spirit of the Act or in other provisions that would warrant us in placing any other interpretation upon the language employed, than that which it plainly imports. It follows, that the facts set forth in Clause A of paragragh 4 of the petition are not sufficient in law to sustian the petition.

2. The second ground, in Clause B, is, that certain ballots were rejected because they were not folded in the same way "they were, when received by the voters, but were so folded as not to display the marks thereon, or the name or names of the candidates, voted for, the back of said ballots being folded inward and a blank face exposed to view."

By sec. 52, Art. 33, the ballots shall be "so folded in marked creases that no part of the marks or printing thereon, excepting that upon the back·and outside, and that upon the detachable stub or coupon shall be visible, &c." By sec. 61, the judge holding the ballots "having first written in ink, the voters name and number upon the coupon attached to one of them, shall deliver said ballot to the voter, after having like-wise written in ink his own name or initials upon the back thereof." "Before leaving the voting booth or compartment the voter shall *fold* his ballot without displaying the marks thereon, and in the same way it was folded when received by him, and he shall keep the same so folded, until he has voted, and so that the signature or initials of the judge from whom he received it and the name and number written on the coupon thereof but nothing else thereon, may be seen." The judge at the ballot-box, when he has received the ballot, "shall de-posit his ballot in the box, having first detached therefrom its coupon." And by sec. 66, all ballots "deceitfully folded to-gether," shall be rejected.

The averment of the petition is that these ballots were cast, but were not counted by the judges. They were folded so that only a blank back was exposed to view. On the side

that ought to have been exposed, were or ought to have been in print, the words "Official Ballot for" (the polling place), and the signature of the President of the Board of Supervisors, and also in writing the name or initials of the Judge of Election.

It was absolutely necessary that the name or initials of the judge should appear to the judge who received the ballot. In 61st sec. it is expressly provided that "no ballot without the endorsement of the name or initials of the judge thereon as hereinbefore provided, shall be deposited in said ballot-box." The petition contains no averment that the name or initials were or were not endorsed on the ballots in the proper place, but it is plain that if it was so folded as to show only a "blank back," it was impossible for the judge who received the ballots to inform himself, in any lawful manner, whether or not there was such an endorsement. He could not lawfully unfold the ballots, for that would expose to his view for whom the voter proposed to vote; nor could he treat them as "rejected," or "spoiled" ballots, as those words are used in the law. It is clear they should not have been deposited in the ballot-box. But by the hypothesis of the petition, they were deposited. If it afterwards appeared when the ballot-box was opened that the initials or name were not endorsed on the ballot, as required by the law, then undoubtedly they should not have been counted, in compliance with the 66th section, that provides, in plain terms, that "ballots which do not have endorsed thereon the name or initials of the judge who held the ballots" shall be rejected. On the other hand, if it be assumed that the initials or name are in fact endorsed upon the ballots, the inquiry is presented, does the case then fall within the provision of the 66th section, that "ballots which are deceitfully folded together," shall be rejected? If the word "together" were not in the clause there would be no question about the matter. That word, as used, might possibly be interpreted so as to indicate that it was the intention of the Legislature that the clause in question should have reference only to cases where two or more ballots were folded

together.   But when it is borne in mind that one of the most important steps in protecting the official ballot and in enabling the judges to be assured of the identity of the ballot offered by the voter with that received by him is found in the method of folding the ballot, that interpretation is not reasonable.  There are provisions which are intended to protect the physical form of the ballot from the time it is prepared by the Supervisors, until it has been counted.   It must be folded in a particular manner, it must be endorsed on the back that will then be exposed; it is delivered to the voter at the moment he goes nto the voting booth, and when returned it must still be olded "in the same way it was when received by him." In view of all these stringent requirements, it is difficult to understand how more than one ballot could get into the voters hands, but it is by no means difficult to perceive how a negleet of the provisions with respect to folding, might be availed of, by designing persons, to destroy the secrecy and the purity of the ballot.   It is not reasonable to suppose that the framers of the Act in the adoption of this clause intended its application to be limited to cases where there were two or more papers folded together.   The word, "together," seems to be a relic of the statute in force before the adoption of the present system.   In the Code of 1888, Art. 33, sec. 65, the words, taken from the Act of 1805, chap. 97, are, "if any two or more of such ballots or papers be deceitfully folded together."   The evil at that time, when each voter supplied his own ballot and was left free to deposit in the ballot-box any paper he chose to deliver to the Judges of Election, was the folding together of more than one ballot so that the number of ballots in the box would be increased at the time of counting.   Under the present system however the purpose of the clause seems to be to insure the proper folding of the ballot, so that the Judges of Election may be assured that the true ballot is deposited.   If the ballot therefore is not folded when returned by the voter to the judges in the same manner as it was when received by the voter, it is illegally and therefore deceitfully folded, and by the terms of the statute should be rejected.

The third error assigned in Clause C of paragraph 4, is that the judges rejected ballots on which the voters "had respectively marked more names thereon than there were persons to be elected to an office, which office was other than that of County Commissioner." The provision of the statute is too clear upon this point to require discussion. It is provided by sec. 66, "if the voter has marked more names than there are persons to be elected to an office, the ballot shall not be counted." This provision is so explicit, as to leave no room for construction.

Finding no error in the ruling of the Court below, the order must be affirmed.

> *Order affirmed with costs to the appellees.*

(Decided March 7th, 1902.)

BOYD, SCHMUCKER and JONES, JJ., dissent as to clause A, of paragraph 4 of the petition and concur with the rest of the opinion.