CHARLES L. HAMMOND, ET AL. *v.* A. GALLATIN LOVE, ET AL.

[No. 55 Adv., October Term, 1946.]

*Decided Per Curiam on September 3, 1946; opinion filed October 9, 1946.*

140

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Edward H. Burke* and *Daniel B. Leonard,* with whom were *Bowie, Burke & Leonard* on the brief for the appellants.

*C. Walter Cole,* with whom was *John Mays Little* on the brief, for the Supervisors.

*Richard W. Kiefer* and *John Grason Turnbull* for the appellees Gathmann and Miller.

*William Curran, Attorney General,* with whom was *J. Edgar Harvey, Assistant Attorney General,* on the brief *amici curiae.*

The following order was filed *per curiam*:

The Court holds that the requirement of the election law for the initialing of ballots is mandatory and that the counting of uninitialed ballots by the Supervisors of Elections was arbitrary and in violation of law. For these reasons, to be amplified in an opinion to be hereafter filed, the order appealed from is reversed and the writ of mandamus is directed to be issued as prayed.

MARKELL, J., delivered the opinion of the Court:

At the 1946 Democratic primary election in Baltimore County the appellant Hammond and appellee Gathmann

were candidates for nomination for Treasurer of Baltimore County; the appellant Burton and the appellee Miller were candidates for the office of Judge of the Orphans' Court. On the face of the returns these appellees were nominated. If the ballots in the fifth and seventh precincts of the fourteenth district had not been counted the appellants would have been nominated. None of the Democratic ballots in those precincts were endorsed with the name or initials of any of the judges of election as provided in Section 68 of Article 33, as revised by Chapter 934 of the Acts of 1945. Because the ballots in those precincts were counted, Gathmann and Miller were declared nominated.

The appellants petitioned the Supervisors of Elections (appellees) for an appeal and review and a recanvass and recount, under Section 54 (as revised). At the recount the Supervisors heard witnesses, including the election officials in the two precincts, permitted cross-examination by counsel for interested parties, and affirmed the action of the election officials in counting the ballots (503 in number) in the two precincts and in declaring Gathmann and Miller nominated. In other precincts where some of the ballots were signed or initialed and some were not, they rejected the unsigned and uninitialed ballots. In making their decision the Supervisors filed a written opinion stating their reasons.

The appellants each filed a petition for mandamus to require the Supervisors, "in lieu of any correction of the returns of the Board of Canvassers of Baltimore County" which the Supervisors had "heretofore made as a result of the review, recount and recanvass," to "correct said returns and any certificate of the Board of Canvassers," "no ballot or vote cast" in the two precincts "to be counted," and to issue new certificates of nomination accordingly. The Supervisors, and also Gathmann and Miller (who on their own application were made parties defendant), answered the petitions for mandamus, in effect admitted the facts alleged, but asserted the legality of the action of the Supervisors in counting

the ballots in the two precincts and denied that this action was "illegal, arbitrary and capricious." The appellants demurred to the answers. The two cases were consolidated and heard on demurrer. The demurrers were overruled and the petitions for mandamus dismissed. From this action the appellants appealed to this Court. Cf. *Price v. Ashburn*, 122 Md. 514, 89 A. 410.

The Supervisors found that "the omission to sign or initial the ballots [in the two precincts] appeared to be an honest mistake on the part of the officials either because of ignorance or neglect." The officials "explained the omission" as "an unintentional oversight or mistake." The Supervisors felt that, under the circumstances, "the ballots were sufficiently identified as official ballots," e. g., each, when given to the voter and when returned by the voter, had the stub on it bearing the name and number of the voter; they did not feel that "any legal voter was deprived of his vote or any illegal vote was permitted to be cast." The Supervisors and the lower court did not find, nor do we find, any evidence of fraud on the part of election officials to disfranchise the voters by omitting to sign or initial the ballots. Nor is there evidence of fraud in any other respect on the part of officials or voters.

Section 68 (as revised by the Act of 1945) provides that at every election "the judge holding the ballots, having first written in ink the voter's name and number upon the coupon attached to one of them, shall deliver said ballot to the voter *after having likewise written in ink his own name or initials upon the back thereof*, * * *. No ballot without the indorsement of the name or initials of the judge thereon, as hereinbefore provided, shall be deposited in said ballot-box, but if deposited shall be counted for the purpose of ascertaining the number thereof, and the judges shall in ink mark on the back thereof the word 'counted' and indorse their names." (Italics supplied.) Substantially the same provisions were contained in the Election Law of 1896 (Chap. 202, Sec. 61); similar provisions (not applicable to judges

but to clerks) were contained in the original Australian Ballot Law of 1890 (Chap. 538, Secs. 154, 158). The Act of 1890 (Sec. 158) provided that such ballots should not be "deposited in the ballot-box, or counted" but should be marked defective and handled in the same manner as rejected ballots.

Section 72 (as revised by the Act of 1945) provides that after closing of the polls and before the ballot-box is opened all the coupons taken from the ballots cast shall be destroyed. The Act of 1896 (Sec. 65) contained a similar provision. Section 73 (as revised) provides that the judges *"shall reject* any ballots which are deceitfully folded together *and any ballots which do not have indorsed thereon the name or initial of the judge who held the ballots."* (Italics supplied.) The Act of 1896 (Sec. 66) so provided.

Section 76 (as revised) provides that the "rejected" (and "defective") ballots, as defined in Section 73 (and Section 70), shall be enclosed in a package to themselves and endorsed " 'rejected and defective'." The Act of 1896 (Sec. 69) contained a similar provision.

The appellees contend (1) that the decision of the Supervisors in counting the uninitialed ballots was an exercise of "discretion" which is not reviewable on mandamus, and (2) that (if reviewable) the decision was correct. The lower court, in a well-considered opinion, based its decision on the first contention but also remarked that it considered the decision of the Supervisors correct. It must be admitted that these contentions are not without color of support in decisions of this Court. We are, however, of the opinion that these contentions are contrary to the express provisions of the applicable statute and to the controlling decisions of this Court.

Until recently, decisions in Maryland and elsewhere left doubt whether an error of law by a quasi-judicial body is an exercise of discretion which is not reviewable on mandamus or an abuse of discretion which is so reviewable. Recent Maryland decisions should make it clear that such errors, *i. e.,* violations of law and of legal

rights, are not frozen in technicalities of mandamus. *Cahill v. Mayor, etc., of Baltimore,* 173 Md. 450, 455, 196 · A. 305, quoted in *Hecht v. Crook,* 184 Md. 271, 279, 40 A. 2d 673. The question has recently been considered in connection with review of action of administrative agencies. Such agencies, like election supervisors, have quasi-judicial powers but, unlike election supervisors, often have large discretionary quasi-legislative powers. Election supervisors are empowered to execute, not to make, election laws. Their decisions are at least as fully subject to review as decisions of administrative agencies. In *Hecht v. Crook, supra,* 184 Md. 280, 281, 40 A. 2d 677, this Court, by Judge Henderson, said: "Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion, where discretion is clearly conferred." The election laws do not purport to make conclusive any decisions of supervisors misconstruing the law or their own powers. Decisions contrary to law or unsupported by substantial evidence are not within the exercise of sound administrative discretion and of the legislative prerogative, but are arbitrary and illegal acts. *Heaps v. Cobb,* 185 Md. 374, 45 A. 2d 73, 76; *Mahoney v. Byers,* 187 Md. 7, 48 A. 2d 600, 603.

In *White v. Laird,* 127 Md. 120, 96 A. 318, *Fitzgerald v. Quinn,* 159 Md. 543, 151 A. 660, and *Roe v. Wier,* 181 Md. 26, 28 A. 2d 471, it was held that in the absence of fraud or arbitrary conduct on the part of the Supervisors in a primary election recount, their decision is not subject to review on mandamus. But in those cases the pleadings or the evidence failed to show that the action of the Board was contrary to law. In White v. Laird the court stressed the factual difficulties in examining ballots and making the distinction (if any and if material) between those marked with a "black lead pencil," a "black pencil" or an "indelible pencil." In

Roe v. Wier is was said that the precise question presented was the same as in White v. Laird, but it was also expressly held that the decision of the Supervisors was correct, *viz.*, in holding that initialing with an indelible pencil is substantially equivalent to initialing with ink. In Fitzgerald v. Quinn, *supra,* it was alleged in the petition for mandamus, but denied in the answer, that lawful ballots were unlawfully rejected. This Court held that the petition should have been dismissed, or "proof should have been taken on the allegation that ballots were rejected without inspection because of defective initialing of other ballots." 159 Md. 547, 151 A. 662. These three cases are distinguishable from the case at bar in that, within the doctrine of these cases, a clear mistake of law, however honest, is "arbitrary" action, reviewable on mandamus. Under the more recent decisions, *illegal* action is reviewable, as such, without characterizing it as "arbitrary."

The question therefore is presented whether the action of the Supervisors in counting the ballots in the two precincts was contrary to law.

In effect, this Court has frequently held regarding election laws, that: " 'If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. * * * In the absence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had, or had not so vital an influence * * * as probably prevented a free and full expression of the popular will'." *Soper v. Jones,* 171 Md. 643, 648, 187 A. 833, 835, quoting *Bowers v. Smith,* 111 Mo. 45, 61, 20 S. W. 101, 16 L. R. A. 754, 33 Am. St. Rep. 491. When the language permits, a requirement may be held directory and not mandatory. *Carr v. Hyattsville,* 115 Md. 545, 549, 550, 81 A. 8. A requirement may be in some respects mandatory but in others only directory. Or partial compliance, notwithstanding non-compliance in some details, may constitute such substantial compliance

that the election or the vote in question will not be invalidated. Initialing with an indelible pencil is substantial compliance with the requirement of initialing "in ink" in Section 68. *Roe v. Wier, supra.* We may assume, for the sake of argument, that the requirement that uninitialed ballots shall not be "deposited in the ballot-box" would not, standing alone, invalidate such a ballot actually deposited in the box by oversight, without fraud.

No such assumption, however, could qualify the peremptory requirement, in Section 73, that the judges "shall reject" uninitialed ballots. This requirement has been in force since 1896, and was preceded by the similar requirement, in the Act of 1890, that such ballots should not be "deposited in the ballot-box or counted." The language is not directory but mandatory. In the total absence of names or initials, no question as to substantial compliance is presented.

In *Leonard v. Woolford,* 91 Md. 626, 640, 46 A. 1025, 1029, the court said that the statute "expressly provides that all ballots shall be rejected which do not have endorsed thereon the name or initials of the judge who held the ballots, and there was consequently no error in their exclusion."

In *Duvall v. Miller,* 94 Md. 697, 51 A. 570, another part of the same clause in the same sentence in Section 73 was construed and applied. It was held that a ballot incorrectly folded by the voter, so as to expose a blank side of the ballot, instead of the side containing the name or initials of the judge, is "deceitfully folded together" and must be rejected. In so holding the court said: "On the side that ought to have been exposed were, or ought to have been, in print, the words 'Official Ballot for' (the polling place), and the signature of the president of the board of supervisors, and also, in writing, the name or initials of the judge of election. It was absolutely necessary that the name or initials of the judge should appear to the judge who received the ballot." 94 Md. 716, 717, 51 A. 572.

Neither the plain words of the statute, nor the opinion in Duvall v. Miller, were modified in this respect by *Coulehan v. White,* 95 Md. 703, 53 A. 786. In Coulehan v. White, this Court adopted the opinion of Judge Boyd in the lower court, except on a point (not now material) on which Judge Boyd had subordinated his own judgment to his interpretation of Duvall v. Miller. Judge Boyd's opinion does not purport, and manifestly he did not intend, to depart from Duvall v. Miller on the point now presented. In Coulehan v. White the initials on all the ballots in a certain ward "were, by mistake of the judge marked on the stub instead of on the body of the ballots." 95 Md. 715, 53 A. 788. It was held that the Legislature intended the endorsement to be written on the body of the ballot, but " 'anywhere "upon the back thereof" is a compliance with the language of the law. The judge of the election holding the ballots thought the back of the coupon was sufficient, and put his initials there, doubtless forgetting that it would be torn off and destroyed, although, under the language of the law, it was perhaps easy for an inexperienced person to be so misled'." 95 Md. 714, 53 A. 788. When the ballots were handed to the voter, and when they were returned by the voter, they "have endorsed thereon" (on the back of the stub) the name or intials of the judge, and this name or initials appeared to the judge "who received the ballot." It was held that such ballots were properly counted.

In effect, it was held in Coulehan v. White that (in the absence of fraud) endorsement on the stub was substantial compliance with the law—or that the legislative intent (implied but not expressly stated) that the endorsement be on the body, rather than on the stub, of the ballot, was directory only. It was not held that, in the absence of fraud, election officials—or the courts—may ignore the peremptory requirements to reject uninitialed ballots. It is true, when the ballots were counted the portion (*i. e.,* the stub) which bore the endorsement had been torn off and destroyed. In the case at bar no part of the ballots in question ever bore the required

endorsement. It may be that the names and numbers of the voters, written by the judge on the stubs, actually identified the ballots as well as the initials of the judges would have done. If this be true, it would not justify us in ignoring the requirement of Section 73. By the decision of the Supervisors wholesale violations of the law are ignored, but in case of lesser violations (when only some of the ballots in a precinct are uninitialed) the law is enforced. This incongruous practice might conceivably produce results more at variance with the will of the voters than the results of compliance with the law.

Our conclusion is in harmony with the history of the Australian ballot in Maryland and other states and with the decisions in other states on similar statutes. Fundamentally, Australian ballot laws substitute, for ballots furnished by the voters, an official ballot, usually identified as such by the signed name or initials of one or more election officials. In Maryland, Australian ballots have been in use since 1890, in most of the other states about the same length of time. In Maryland since 1896, the two major political parties have had equal representation among election judges and clerks, and unequal representation on Boards of Supervisors. In primary elections a faction of a party or an individual candidate, as such, has no representation at all on Boards of Supervisors or among judges or clerks.

If a statute provides that ballots shall be initialed but does not provide that uninitialed ballots, or ballots initialed on the wrong part of the ballot, shall not be counted, it may be lawful to count uninitialed ballots (*Gass v. Evans,* 244 Mo. 329, 149, S. W. 628, quoting *Bowers v. Smith, supra*) or ballots initialed in the wrong place (*Horning v. Burgess,* 119 Mich. 51, 52, 77 N. W. 446, cited in Coulehan v. White). Usually Australian ballot laws provide that uninitialed ballots shall not be counted, and such provisions are mandatory, though they may invalidate all the votes in a precinct. *Orr v. Bailey,* 1899, 59 Neb. 128, 80 N. W. 495 (all ballots endorsed by one judge instead of two) ; *State v. Heatherly,* 1924, 96

W. Va. 685, 123 S. E. 795 (endorsed by one clerk, instead of two) ; *Blue v. Allee,* 1916, 184 Ind. 302, 111 N. E. 185 (one clerk, instead of two) ; *Barlick v. Kunz,* 1940, 375 Ill. 318, 31 N. E. 2d 283 (some, not all uninitialed) ; *Tuthill v. Rendleman,* 1944, 387 Ill. 321, 56 N. E. 2d 375 (some, not all, endorsed by the clerk, instead of the judge). If a statute expressly provides that ballots shall not be initialed on a perforated corner, this provision is mandatory, and ballots there initialed are within a prohibition against counting ballots not initialed. *People v. Rinehart,* 161 Mich. 585, 126 N. W. 704.

It is unfortunate that voters should lose their votes by oversight of election officials—and by their own failure to notice that they have not been given authenticated ballots. But, as has often been said, it would be a greater evil for the courts to ignore the law itself by permitting election officials to ignore statutory requirements designed to safeguard the integrity of elections, *i. e.,* the rights of all the voters. It is common knowledge, evident on the face of the election laws, that in Maryland, as elsewhere, for upwards of fifty years, the peremptory requirement of initialing ballots has been deemed by the Legislature an important safeguard in order to authenticate ballots by a definite rule which leaves little or no discretion to election officials. If this long-established safeguard has become unnecessary, it is not for this Court to change or abolish it.

For the reasons above stated, this Court on September 3, 1946, by a *per curiam* order, reversed the order appealed from and directed that the writ of mandamus issue.