(Decided 27th June, 1867.)

GRAYSON EICHELBERGER *vs.* JOHN SIFFORD AND HENRY LORENTZ.

*Practice—Mandamus—Power of Attorney—Agents or Attorneys—Desertion—State Bounty—Bounty Commissioner—Certificate of Justice of the Peace—Evidence.*

Where in an answer to a petition both matter of law and of fact are presented in defence, it is incumbent upon the petitioner to take issue thereon, or to demur thereto.

Mandamus is a proceeding at law, in which matters of fact are decided by the jury, unless submitted by agreement to the Court.

A power of attorney given for a valuable consideration, is not revocable by the party himself.

The words "agents or attorneys," are not necessarily to be interpreted "attorneys in fact;" they may·be construed to include assignees.

The desertion of a person who had enlisted and been enrolled in the army of the United States under the call of the President, and who for a

valuable consideration assigned the State bounty to which he was entitled, is no bar to the payment of the same to his assignee.

The duty of the commissioner appointed under the Acts of Assembly authorizing the payment of bounties to enlisted men and others, is strictly ministerial, and upon his failure to pay the bounties so authorized a mandamus may issue to compel him to do so.

The certificate of a justice of the peace, of the execution and acknowledgment of a power of attorney, is not evidence *per se* of the facts certified.

Where a person executed a power of attorney by making his mark, which was tested by two witnesses, and acknowledged the same before a justice of the peace, the testimony of the justice or of one of the subscribing witnesses is requisite to prove the identity of the principal, and the execution of the instrument.

APPEAL from the Circuit Court for Frederick County.

The facts of this case are sufficiently stated in the opinion of the Court.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*A. Randall*, (Attorney General,) for the appellant, argued:

That the Court below erred in issuing the mandamus.

1st. Because there was not sufficient evidence properly before the Court, to show that the power of attorney, under which the appellees claimed this bounty, as the assignees of James Rian, was legally executed by him. *Acts of* 1865, *chaps.* 33, 49 *and* 106.

2d. Because the said James Rian was not entitled to this bounty, having "deserted from the service and army of the United States immediately on and after his said enlistment, and having never rendered any service therein."

3d. Because the appellant is an officer appointed to exercise judgment and discretion in deciding to whom and under what evidence the payment of these bounties

is to be made, and not a mere ministerial officer, and therefore he cannot be compelled by mandamus to act, as in this case he is required to do. *Thomas vs. Owens*, 4 *Md. Rep.*, 189; *Harwood vs. Marshall*, 9 *Md. Rep.*, 83; *State, relation of McClellan vs. Graves et al.*, 19 *Md. Rep.*, 351; *Green vs. Purnell*, 12 *Md. Rep.*, 329; *State vs. Sterling*, 20 *Md. Rep.*, 502.

*Oliver Miller* and *William H. Tuck*, for the appellees.

The first and main objection made by the Commissioner to the payment of this bounty is, that Rian "deserted from the service and army of the United States immediately on and after his said enlistment, and never rendered any service therein." It is submitted that this is not a valid reason for refusing payment. The bounty laws of the State, under which the Commissioner was acting, (Acts of 1865, chapters 33 and 106,) do not, either in letter or spirit, say that *desertion* is a good plea in bar to the payment of the bounty. These laws say, that whenever, under the proclamation of the President of December, 1864, or any similar one thereafter to be made, the quota of Maryland shall have been ascertained and promulgated, "a bounty of $300 shall be paid to every volunteer or drafted man who may enter or shall have entered the military or naval service of the United States, and to every drafted man who may furnish or shall have furnished a substitute that enters such service in his stead, and to every man liable to draft who may furnish or shall have furnished a substitute who so enters said service, or his authorized agent or attorney, and who shall be credited to the quota of the sub-district of the State where such volunteer enlists, or where such drafted men or man liable to service resides, the fact of such person respectively having so entered the service, and being so credited, to be first ascertained and certified as hereinafter directed." The mode of ascertainment of

such entry and credit to the State and the agent by whom payment of the bounty is to be made, is then provided for simply thus: One Bounty Commissioner is to be appointed for each county and legislative district of Baltimore, who "shall have the right to draw from time to time upon the Comptroller for such sums as shall be required to pay the bounty therein authorized, to the men or their authorized agents or attorneys, who are credited to the sub-district within which said Bounty Commissioners are situated, the draft of said Bounty Commissioners to be affixed to a roll bearing upon it the names of the persons to whom said bounty is to be paid, and of the sub-districts to which they are credited as aforesaid, with a certificate thereon endorsed from the Assistant Provost Marshal General for the State, declaring that the men thereon enrolled have been so credited to the quota of said sub-district, the said roll so certified and with the draft of the Bounty Commissioners thereon shall be retained by the Comptroller, and he, upon its receipt, shall issue the usual warrant to the Treasurer for the payment of the amount of said draft." Is it not too plain for argument, that under this law, the only conditions upon which the faith of the State to pay the bounty is plighted, are enlistment or entry into the service of the United States, and credit to the State on her quota under the President's proclamation? A party who enlists or enters the service and is credited to the State is entitled to the pay; in the words of the law, *every* such person "shall be paid" a bounty of $300. There are no forfeitures or conditions subsequent attached. The record shows that all the conditions entitling Rian to his bounty were complied with. He enlisted in the 3d regiment of the Potomac Home Brigade, under the proclamation of the President of December, 1864, and was credited as part of the quota of Frederick district, in the county of Frederick, under the call or proclamation. His name

with others was on the roll of names of persons to whom bounty was to be paid, on which the Commissioner drew his draft upon the Comptroller, and that roll had endorsed thereon the certificate of the Assistant Provost Marshal General for the State, declaring that the men thereon enrolled had been duly credited to the sub-district, and the Commissioner received from the Treasury the money to pay him.    With his desertion from service an hour or a day or a week or a year thereafter, the State had nothing to do, and never in the passage of these bounty laws designed to have anything to do, or ever authorized any of its agents in the disbursement of the money to look to or consider it for a single moment.    The State performed her duty when she put into the service of the United States her quota of men.    It was the duty of the General Government and the officers of the army to keep them in service after they once got hold of them.    The Government had abundant power to do this, and if every man from every State had deserted, the power to make new calls and demand new quotas existed still.    The State had no power over the enlisted man to keep him in service, and never intended to impose, or at least never has imposed, any penalty for his desertion.    If the State had been clothed with the power, or the duty had been devolved upon her to keep her men in service, it is probable the bounty laws would have provided penalties and forfeitures for desertion, and in such cases would have postponed payment of bounties until an honorable discharge or death in service, had entitled the parties thereto. Nothing of the kind is provided for in these laws of 1865. The payment is to be made at once.    The Bounty Commissioners are to draw from time to time, make disbursements, and make reports of such disbursements every three weeks, "until the quotas of each county and the city of Baltimore shall have been filled."    The exigency at the time upon the citizens of the State was such that

any postponement of payment, or the right to payment, would have utterly defeated the object of the law. It is impossible therefore that the Legislature could have contemplated that desertion after enlistment, and credit to the State, should have defeated such payment or right of payment. The language of the laws are clearly against, and the circumstances under which they were passed clearly forbid, any such construction being placed upon them.

Another objection to the mandamus is, that the Commissioner was required to give a bond in the penalty of $20,000 for the due performance of his duties, and was required to pay to each person named on the rolls, and entitled thereto, or to his duly authorized agent or attorney, the sum of $300, and that there is no evidence to satisfy either the Court or the Commissioner that the person who executed the power of attorney filed with the application was James Rian, or the James Rian named in the roll, or that the petitioners are the authorized agents of the James Rian named in said roll, and without such evidence he might pay the money wrongfully, and thus be compelled to pay the same money again to his detriment and loss.

As to the bond of $20,000 required by the law to be given, (and which in the case of the particular Commissioner in question might, from his well known responsibility, high character and integrity, have been dispensed with altogether,) the obvious design of the law was to provide a security to the State, as in the case of all other officers having custody of public moneys, such as the Treasurer, &c., against the embezzlement or application of it to their own uses, or to uses utterly foreign to the purposes of the law. It is respectfully submitted that if all the men who enlisted or entered the service under this call, in Frederick county, and were credited thereto, had been paid their bounties, and then the day after had deserted, no recovery could have been had by the State on this bond, nor any

forfeiture thereof incurred thereby. Having taken the precaution to obtain the certificate, the Assistant Provost Marshal General for the State declaring that the men named on the roll had been credited to the State's quota for his district, he was perfectly safe, so far as suit upon his bond was concerned, in paying them.

As to the fact that under the provisions of the Acts of Assembly, and by giving his bond, and receipt for the money from the Treasury, the Commissioner was required and became liable to pay to each person, or his duly authorized agent or attorney, named on the rolls, (on which the Commissioner had drafted on the Comptroller for the money, and received it from the Treasurer,) and entitled thereto, the sum of $300, there is no dispute on the part of the appellees; it is just the position they maintain. As to the assertion that there is no evidence to satisfy the Court below or the Commissioner that the person who executed the power of attorney was James Rian, it is submitted respectfully, that whatever evidence may have been required to satisfy the Commissioner's mind on this subject, there was evidence abundantly sufficient to satisfy the Court below, or any other reasonable Court, on the subject. The paper on its face purports to be signed by James Rian, was signed in the presence of two witnesses, one of whom was a justice of the peace of Frederick county, and who states that James Rian was known to him to be the identical person he describes himself to be in the power of attorney, and that he appeared before him personally and acknowledged the said power of attorney to be his act. The same observations are applicable as to the evidence of identity of the Rian who executed the power of attorney with the Rian named in the roll, and that the appellees are his duly authorized attorneys.

As a further objection, the Commissioner insists that he is not a ministerial officer, but by the terms of the

Eichelberger *vs.* Sifford and Lorentz.

Acts of Assembly and of his appointment, and of the duties to be performed by him, he must necessarily be vested with a discretion and exercise his judgment for the protection, not only of himself, but also of the State, so that the moneys placed in his hands shall not be paid to any others but those actually entitled thereto under the provisions of said Acts of Assembly, and that, therefore, a writ of mandamus cannot properly issue.

It is submitted that the act, the performance of which is sought to be enforced in this case, is purely ministerial, and does not involve the exercise of any judgment or discretion whatever. The law provides that a specific sum of money *shall* be paid to certain designated persons, and appoints the officer or agent to make the disbursement, and puts the money in his hands for that specific purpose. He is to affix his draft to a roll bearing the names of the persons to whom the bounty is to be paid, which roll is to have thereon a certificate from the Assistant Provost General for the State, that the men thereon enrolled have been duly credited to the State. All this was done in this case, and the Commissioner obtained the money on his draft. It then became his duty to pay the $300 to each person, or his authorized agent or attorney, named on said roll so certified. Nothing could be more purely ministerial than the performance of such an act. There is no room left for discretion or the exercise of judgment. He is not clothed with the power of adjusting and settling the accounts of the parties named on the roll, but he is commanded by the law to pay to each of them a specified sum of money. The case clearly comes within the jurisdiction of the Court to grant a mandamus. *Thomas vs. Owens*, 4 *Md. Rep.*, 189 ; *Green vs. Purnell*, 12 *Md. Rep.*, 329 ; *Tapping's Mandamus*, 64, 65, (76 *Law Lib.*)

Bowie, C. J., delivered the opinion of this Court.

This appeal is taken from an order of the Court below, passed on the application of the appellees, directing a peremptory writ of mandamus to issue to the appellant, the State Bounty Commissioner for Frederick County, under the Acts of Assembly of 1865, chs. 33 and 106, commanding him to pay to the appellees, the authorized attorneys of James Rian, the State bounty of three hundred dollars, due and owing to him as a volunteer duly enlisted, enrolled and mustered into the army of the United States, under the call of the President of the 19th of December, 1864, and credited as part of the quota of the Frederick district, in Frederick County.

The appellant's answer admits that Rian enlisted and was credited as part of the quota of Frederick district, that the appellant drew from the Treasury the sum of $300 for each person so enlisted and has the money now in his possession, but the appellant refuses to pay the appellees, first, because Ryan deserted from the army of the United States, immediately on and after his enlistment and never rendered any service therein.

For further defence, the appellant alleges, that he is required to pay to each person named on the rolls, and entitled thereto, or to his " duly authorized agent or attorney," the sum of three hundred dollars, and there is no evidence to satisfy the Court or the respondent of the identity of the said Rian, whose signature purports to be affixed to the power of attorney, or, that the appellees are his authorized agents or attorneys.

And for further cause, the appellant avers he is not a ministerial officer, but by the terms of the Act of Assembly, and the nature of his office, he is vested with a discretion, and therefore a writ of mandamus should not issue against him

The appellant's answer presents both matter of law and matter of fact in defence, verified by his affidavit. It was incumbent upon the petitioners to take issue, or

demur to these several defences. The record does not show either issue joined or demurrer entered. The Court below proceeded to act upon the petition and answer, without evidence, except the power of attorney and justice's certificate filed with the petition. There was no agreement as far as appears of record, that the issue of fact should be determined by the Court.

There being no such submission of the facts to the Court, they could not properly be decided by it; a mandamus, is a proceeding at law, in which matters of fact are decided by the jury, unless submitted by agreement to the Court. *Code of Pub. Gen. Laws, Art.* 59, *sec.* 1.

It may be said this objection was not made below; it is evidently presented by the answer. Assuming the fact to be established, the questions of law raised by the answer, which in that respect may be considered a demurrer to the petition, (the fact of desertion not being denied,) recur. The first consideration in this review of the case is, whether the petitioners sue "*suo jure*" or "*alieno jure.*" They pray for a mandamus, commanding the appellant to pay to them, as " the authorized attorneys of James Rian "— but they claim it under a power to receive it for their own use and benefit.

This power, if executed by the principal, is not a revocable power, but a power coupled with an interest, which passes all the right, title, and claim of the principal, if given for a valuable consideration—but although not revocable by the party himself, it would seem to be revocable by his death. 2 *Kent's Comm.*, 857, 861, (*top paging.*)

If the petitioners have a right to claim "*suo jure,*" that right cannot be affected by anything which occurred after the enlistment of the volunteer. The Acts use the words " authorized agents or attorneys," which the appellant contends do not include assignees.

These terms must receive such construction, as is most consonant with reason and policy. The words " agents

or attorneys " are not necessarily interpreted " attorneys in fact." The verb " attorn " among other meanings, has " to transfer or turn over to another. "Attorney" is one put in place of another. The references before made, show powers of attorney are both revocable and irrevocable. There is nothing either in the policy or letter of the law, which authorizes us to give the word " attorneys " its more limited sense. On the contrary, interpreted by the light of experience, such acts could hardly have been executed, if the bounty were payable only to an attorney " *en autre droit.*"

Regarding the law as warranting the payment of the bounty to attorneys for a valuable consideration, desertion after the assignment, cannot be any defence or reason for non-payment.

The word " bounty " *ex vi termini*, implies a gratuity, not compensation, an inducement to enlist. It was not paid only to the man who volunteered and served, but to every drafted man who furnished a substitute. However ignominious and disreputable desertion may be, it is not followed by forfeiture of the bounty in such a case as this, and it is not necessary to go further to lay down general rules. The duty of a Bounty Commissioner is as strictly " *ministerial* " in the legal sense of that word as can well be conceived. Ministerial is used in opposition to " discretionary power or authority." The office is that of a clerk acting under provisions of the law of the utmost simplicity.

Like the Treasurer in the case of *Thomas vs. Owens*, 4 *Md. Rep.*, 189, he had only to disburse the public money upon the production of the certificate of the Provost Marshal, or the presentation of a power of attorney duly authenticated.

The Bounty Commissioner must use due caution to prevent fraud or forgeries, but so must every man acting in any official capacity. The Treasurer must be satisfied

that the warrant of the Comptroller is genuine ; yet it was held in the case of *Owens,* before cited, if a proper warrant were drawn by the Comptroller and presented to the Treasurer, the duty of the latter was purely ministerial, and if payment were refused, a mandamus was the proper remedy.

We have said the issue of fact presented by the answer had not been proved. There is no Act of Assembly in this State, making the certificate of a justice of the peace of the execution and acknowedgment of a power of attorney, evidence *per se* of the facts certified.

The magistrate or one of the subscribing witnesses, the principal having made his mark, should have been called and examined to prove the identity of the person and the execution of the instrument. In the absence of such proof, the Comptroller was justified in withholding payment. The order granting the mandamus being premature, the same will be reversed and *procedendo* awarded.

> *Order reversed and*
> *procedendo awarded.*

(Decided 28th June, 1867.)

WEISEL, J., delivered the following dissenting opinion :

I am constrained to dissent from some of the views of my brothers expressed in their opinion in this case, agreeing with them, however, in the reversal.

The appellees are the assignees of the bounty, but took a power of attorney to enable them to receive or collect it. The petition and power of attorney both assert this character of the claimants.

In the argument it was contended on the part of the appellant that the bounty, by the express terms of the Acts of Assembly, was to be paid by the Bounty Commissioner to the volunteer or drafted man, or to his substitute, entering the service of the United States under the call of the President mentioned therein, or to his

*authorized agent or attorney;* and that there is no authority for paying it to an assignee, the letter as well as the spirit of the law designing the soldier entering the service to be the recipient, by himself or his agent or attorney, of the bounty; and that this design of the law would be frustrated, the public service impaired, and the Treasury defrauded by a different construction, or by a payment to any but the persons designated by the Act. This position, I think, is the true one. Whilst on the one hand it secures to the honest soldier the full benefit of the bounty and protects him against designing men and evil practices, it secures to the public the best services when danger calls for them, and gives the proper direction to the funds, raised to reward those who are ready to peril person and life for the public safety. The law is studiously careful throughout in the use of language restricting the payment to the volunteer or drafted man, or his substitute, or his authorized agent or attorney. Public policy forbids such assignments, unless the law which creates them, expressly, or by necessary implication, allows them; and they will not be upheld either in equity or at law. So it has been decided repeatedly in the English Courts with regard to the full or half pay of an officer in the army or navy, which is not assignable either by the party or by operation of law. In such cases the object of the Government is to command a right to his future services, and to enable the party to perform the duties with suitable means to support him. And Judge Story thinks that the same principle should be applied to pensions, although they are allowed for past and not future services. It applies with great force to bounties which are given as additional inducements for services to be rendered. They are in the nature of rewards; otherwise they would be a vain and extravagant gratuity, and in such case every consideration would confine the gift to the donor. The want of a consideration would deprive it of

the main attribute of a contract and divest it of any assignable quality. 2 *Story's Eq. Jur.*, sec. 1040, (*d*,) *and* 1040, (*e*.)

There is an obvious distinction between an assignee, with a power to collect, and an agent or attorney duly authorized to receive. The assignee collects for himself, and may have paid but a small consideration for the bounty. The agent or attorney contemplated by the law collects or receives for his principal, who gets the full amount for himself, with only such deductions or commissions as may be allowed the agent for his services. It is true, an assignee may impose himself upon the disbursing officer as an agent with a power of attorney, and succeed in obtaining the money, but where the true character of the applicant is known, that officer is acting strictly within the line of duty and the provisions of the law, by refusing payment.

I concur that a mandamus is the proper remedy. But the applicant must bring himself within the terms of the law. The Commissioner must be satisfied that the person appplying, by himself or agent, is on the roll containing the names entitled to the bounty drawn from the Treasury ; and in case the application be made by an agent he is to be further satisfied of his appointment or authority as such. But in determining these he acts ministerially. As a public officer and accountable to the Comptroller of the Treasury, (*Const.*, *Art.* 6, *secs.* 3 *and* 14 *Md. Rep.*, 369,) it is his duty to pay to the right person, and have the proper voucher.

The words " agent and attorney," in the Acts of Assembly mean, in my judgment, the same thing. An agent who acts with a formal power of attorney is denominated an attorney in fact.

It appears from the answer of the appellant, uncontradicted by anything in the record, that the James Rian who enlisted and assigned his bounty thereupon to the appellees,

" deserted from the service and army of the United States immediately on and after his said enlistment, and *never rendered any service therein.*" The party himself, or his agent, in the face of this fact, could not have received his bounty after enlistment and after desertion had he applied for it, unless the Legislature of Maryland intended to offer a bounty for *desertion* and not for service, which can scarcely be pretended. And if the bounty were paid to him and he afterwards deserted, I hold that an action would lie for the recovery of the bounty thus paid, and of which the State was defrauded.