J. SAMUEL PRICE ET AL., SUPERVISORS OF ELECTION
FOR WORCESTER COUNTY, ACTING AS CAN-
VASSERS OF ELECTION,

*vs.*

QUINCE ASHBURN.

*Election laws: counting and canvassing votes; canvassing
boards; duty of—; certification of returns; appeals;
immediate hearings; mandamus; demurrers
and answers.*

In mandamus proceedings, a failure in the answer to deny
the averments of the petition is taken as an admission of the
truth of such averments.                              p. 520

A demurrer to an answer to a petition for a mandamus is
recognized in Maryland as proper and regular practice and
procedure, and if the demurrer to the answer is sustained, the
order may be issued without proof, when the answer has not
denied the averment of the facts set out in the petition.     p. 520

On an application for a mandamus, the sustaining of the
demurrer does not have the effect of striking out the answer
made.                              p. 520

The board of canvassers of a county refused to canvass and
count the returns and tally sheets of an election district, on
the ground that the returns, etc., were not in conformity with
the laws; a candidate at such election for the office of Senator
applied for a writ of mandamus to compel the board to canvass
and count the votes: *Held,* that it was a proceeding involving
the right to a public office, and that an appeal from an order
granting the writ was entitled to an immediate hearing and
determination under the provisions of section 86 of Article 83,
as well as under those of section 44 of Article 5.          p. 519

All of the judges and clerks of election properly sealed the
election returns and tally sheets, and properly authenticated
the same in the manner required by law with the names of the
judges and clerks written across the flap of the envelope, and

duly forwarded the same to the board of canvassers; but two of the judges and one of the clerks had refused to sign certain of the returns and tally sheets, but enclosed them with their certificate to the effect that they refused to sign the same because of their belief that there had been illegal voting in certain polling places; such refusal of the judges and clerks to sign, with their certificate of explanation, did not invalidate the return so made, and the duty of the canvassing board was to canvass and count the returns. p. 523

The duties of canvassing officers are purely ministerial, and their functions are, in general, only to canvass and take the result as shown by the returns. p. 524

When the returns of the judges and clerks of the election, made to the board of canvassers, under Article 33 of the Code of 1912, are authenticated as required by statute and in substantial compliance therewith, it is the duty of the board of canvassers to canvass and count the returns, and upon their refusal so to do a writ of mandamus may be issued to compel their action. pp. 524, 525

*Decided December 19th, 1913, by a per curiam order.* Written opinion filed, January 15th, 1914.

Appeal from the Circuit Court for Worcester County. (PATTISON, C. J., STANFORD and JONES, JJ.)

The cause was argued before BISCOE, J., presiding, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alonzo L. Miles* and *George M. Upshur,* for the appellants.

*William L. Marbury,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Worcester County, dated the 2nd day of December, 1913, sustaining the petitioner's demurrer to the respondents answer, in a mandamus proceeding and ordering the writ to issue, directing the appellants, the respondents below, as a Board of Canvassers of Election for Worcester County to

forthwith convene, and to canvass the votes cast for State Senator in the Eighth Election District of that county, held on November 4th, 1913, and to declare the result.

The order passed by the Court in the case, and appealed from, is as follows:

> "In the above case it is ordered this 2nd day of December, 1913, by the Circuit Court for Worcester County that the demurrer of the petitioner to the respondents' answer filed herein be, and the same is hereby, sustained; and, upon the fact stated in the relator's petition and admitted in the respondents' answer, it is further ordered that the writ of mandamus issue forthwith commanding the respondents to convene and canvass the votes for State Senator in the 8th Election District of said county as shown by the original statements or returns and tally sheets thereof mentioned in the petition and answer, and to add up the votes, together with the votes for State Senator in all other districts of the county, as shown by the original statements or returns and tally sheets of the election held on November 4th, 1913, in the county, and to make abstracts or statements of the same, and to transmit the last named statements, so to be made by the respondents attested by the signature of their chairman and secretary, to the Clerk of the Circuit Court for said county."

The petition avers, that the appellee, a citizen and voter, duly qualified of Worcester County, Maryland, was a candidate for the office of State Senator for that county, at an election held on the 4th day of November, 1913; that the election was duly held in the Eighth Election District of that county on that date, and all the requirements of the election law of the State were complied with by the judges and clerks in the holding of the election, as will appear by the returns and certificates made and returned as the law required; that two of the judges, and one of the clerks of the Eighth Election District refused to sign the returns, and certificates at the close of the election in that district, upon certain grounds, and

for certain reasons, stated in a return made by them and that copies of such written statement were sent up with the returns to the Board of Canvassers as required by law, and were received by them. And that the Board of Canvassers refused to canvass the returns as thus certified and sent to them.

It further avers, that the petitioner was voted for at the election for the office of State Senator of Worcester County, and received a large majority of the votes cast in the district, and that by casting out and rejecting the vote of the district, the result of the entire vote of the county was so changed, as to defeat him for the office of Senator, whereas if the vote of this district had been counted, he would have been elected.

The petition, then avers, that under the law, and the facts as stated, it was the duty of the Board of Canvassers to reconvene, canvass the returns, and declare the result of the votes cast in that district for State Senator, and prayed for a rule upon the Canvassing Board, the defendants, to show cause why a writ of mandamus should not be granted.

The Board of Canvassers answered the petition on the 18th of November, 1913, and in its answer they set out at length the several facts relied upon in reply, and the reasons given for not canvassing the returns. The answer, however, nowhere denies or controverts the averments of fact, set out by the petition, but substantially admits them as true as alleged. 26 *Cyc.* 453.

By the second paragraph of the answer, it is averred, that after the election held in the Eighth Election District of Worcester County, Maryland, on the fourth day of November, 1913, two of the judges and one of the clerks of the election district declined and refused to sign the returns of the election in the election district, and stated their reasons therefor in writing, a copy whereof, signed by themselves was enclosed with each return; and two of the judges and one of the clerks of the election district declined and refused to sign the set of tallies of said election in the election district and stated their reasons therefor in writing, a copy whereof,

signed by themselves was enclosed with said tally sheets; and
that the original statements or returns and the tally sheets
were duly delivered to these respondents, organized and sit-
ting as a Board of Canvassers, on the Thursday next follow-
ing the election, and that upon opening all the envelopes con-
taining the returns and tally sheets, these respondents found
that the returns and tally sheets were not signed by two of
the judges and one of the clerks of the election, and enclosed
with each of the returns, and each of the tally sheets, was a
paper signed by the two judges and the one clerk, giving their
reasons for not signing the returns and tally sheets, which
written statements of reasons was sealed by these respondents,
and is in their custody, and a copy of the returns is filed as
Exhibit No. 1.   It is as follows:

"Stockton, Md:, Nov. 5, 1913.

We, the undersigned Judges and Clerk of the Eighth
Election Dis. of Worcester Co., refuse to sign the re-
turns of said district for the reason that from what
came to our notice we believe there was illegal voting
done at this polling place Nov. 4th, 1913."

The first, third, fourth and fifth paragraphs of the answer
in view of the conclusion we have reached, become imma-
terial, and need not be stated.

By the sixth paragraph of the answer it is further averred
that at a meeting of the Board of Canvassers the following
resolution was, on motion, adopted by a majority vote of the
board:

"*Resolved,* That the Board of Canvassers of Worces-
ter County, Maryland, do refuse to canvass the re-
turns and tally sheets of the Eighth Election District
of Worcester County, of the election held on the fourth
day of November, 1913, in the county, because the
same are not in conformity with the law, are illegal
and invalid, and that the same be and are hereby re-
jected."

By the seventh paragraph of the answer, it is stated, that
by the term "refuse to canvass" used in the resolution these

respondents meant that they refused to add up and include in the certificate of election the alleged returns from the eighth election district and that as a matter of fact they did examine and consider the statements from the district and rejected the district because of irregularities in the alleged returns in that they were not signed by two of the judges and one of the clerks of the district and because they were therefore not in conformity with law.

The appellee demurred to this answer, and on this state of pleadings the case was heard. The Court below sustained the demurrer, and directed the writ to issue.

The right to a speedy hearing and decision of the case, in this Court upon the transmission of the record, or on the original papers is specially provided for by the Statute.

By section 86 of Article 33 of the Code, it is provided that there shall be the same right of appeal as in other mandamus cases, but such appeal shall be taken within five days from the date of the decision complained of, and shall be heard and decided by the Court of Appeals, as soon after the transmission of the record as possible, and the testimony taken in such cases shall be sent up to the Court of Appeals as part of the record.

But apart from this statute, section 44 of Article 5 of the Code, also provides, that from every judgment or order granting or refusing a peremptory mandamus in any case hereafter brought involving the title or right to a public office either party shall have a right to appeal, and on such appeal, the clerk of the Court shall forthwith transmit the original papers, including the judgment or order to the Court of Appeals, and said Court shall immediately hear and determine the case.

It is manifest, we think, that this case involves the right to a certificate of election to a public office, and was entitled to an immediate hearing and determination by this Court according to the provisions of the statute cited and referred to above. It was done in *Creager* v. *Hooper,* 83 Md. 490,

and *Covington* v. *Buffett,* 90 Md. 578, and these cases are
directly in point and are controlling here.

. The case was therefore heard by us on the 19th of December, 1913. It was fully argued by counsel on both sides and
our conclusions upon the questions involved, were thereafter
announced in a *per curiam* opinion. We will now briefly
state the reasons upon which that decision was based.

The contention that the writ was improperly directed to be
issued after demurrer to the answer and without proof to
support the allegations of the petition, cannot prevail. A
demurrer to an answer in a petition for mandamus has been
recognized in this State as a proper and regular practice and
procedure since the case of *Eichelberger* v. *Sifford,* 27 Md.
320. The question was directly determined in *Hardcastle* v.
*R. R. Co.,* 32 Md. 32, and has since been followed and sanctioned by this Court: *Barney* v. *State,* 42 Md. 480; *County
Commrs.* v. *Banks,* 80 Md. 322; *Hooper* v. *New,* 85 Md.
586; *Frederick County* v. *Fout,* 110 Md. 170.

In *Beasley* v. *Ridout,* 94 Md. 649; *Sudler* v. *Lankford,*
82 Md. 148, and *Legg* v. *Annapolis,* 42 Md. 222, relied upon
by the appellant, there was no answer whatever, or an insufficient answer, and the Court properly held that the proceedings were not conducted as prescribed by Article 60 of the
Code, so as to properly present the questions.

*Hooper* v. *New, supra,* disposes of any question as to the
propriety of the procedure in this case and is applicable here.
We said in that case, "an answer was filed; and to that
answer a demurrer was interposed. The demurrer admitted
all the facts set up in the answer, and raised purely and
simply a question of law, and that question was whether conceding every fact averred in the answer to be true, a valid
legal ground was shown against the issual of the writ. The
answer is still in the case. The sustaining of the demurrer
did not strike out the answer as a successful motion to quash
it would have done. The facts upon which the question of
law arose were admitted and the order directing the writ

to be issued was not passed by default for the want of an
answer, nor because the allegations of the petition were taken
*pro-confesso,* but because the naked legal question presented
by the petition and the answer was determined adversely to
the respondent."

The controlling question and the one presented by the
pleadings in this case is whether the facts set up in the
appellants' answer and admitted by the demurrer to be true
constitute a sufficient and valid legal ground to have justified
the board of canvassers in rejecting the returns and in refus-
ing to canvass them as made, so as to defeat the issuing of
the writ of mandamus.

The decision of this question involves a construction of
certain sections of what is known as the Election Law of
the State, Article 33 of the Code (1912) and whether the
returns as made were "returns" within the meaning of the
election law and were such as to have required the board to
canvass them under the facts of the case.

It is needless to discuss the proposition, that if the returns
as made, were authenticated as required by the statute or if
there was a substantial compliance with the provisions of the
statute, it was the plain duty of the board to have canvassed
them as required by law, and the writ in this case was prop-
erly granted.

As was said in *Luce* v. *Mayhew,* 13 Gray, 83, the determi-
nation of the case, must then depend upon the answer to be
given to the question, whether the paper received from the
town of Chilmark was a return such as the law prescribes
and which the board of examiners were required by law to
examine and treat as a legal return.

The reason assigned by the board in this case for refusing
to canvass the returns appears from a resolution which is
set out in its answer and is as follows: "Resolved, That the
board of canvassers of Worcester County, Maryland, do
refuse to canvass the returns and tally sheets of the Eighth
Election District of Worcester County, of the election held

on the fourth day of November, 1913, in the county, because the same are not in conformity with the law, are illegal and invalid, and that the same be and are hereby rejected, and that by the term "refuse to canvass" used in the resolution these respondents meant that they refused to add up and include in the certificate of election the alleged returns from the Eighth Election District and that as a matter of fact they did examine and consider the statements from the district and rejected the district because of irregularities in the alleged returns in that they were not signed by two of the judges and one of the clerks of the district and because they were therefore not in conformity with law."

While two of the judges and one of the clerks, declined to sign the returns and the tally sheets, it is admitted that they did make a return as required by the statute in such cases, and stated their reasons for not signing them, as follows: "We refuse to sign the returns of the district for the reason, that from what came to our notice, we believe there was illegal voting done at the polling places November 4th, 1913."

These statements were inclosed in an envelope, securely sealed, and "each of the judges and clerks wrote his name across the fold of the envelope" and they were found deposited in the ballot box, by the canvassing board, when opened by them.

Section 75 of the General Election Law after directing in what manner the judges shall make the returns of the result of the canvass provides, if any judges or clerk shall decline to sign such return, he shall state his reason therefor in writing, and a copy thereof signed by himself shall be enclosed with each return. Each of the statements shall be enclosed in an envelope, which shall then be securely sealed with sealing wax, or other adhesive material and each of the judges and clerks shall write his name across the fold of the envelope.

The statute also provides for the same return for the tally sheets, when the judges refuse to sign them.

It cannot therefore be fairly argued that because two of the judges and one clerk, refused to sign the usual statement, or tally sheet, that the alternative return made by them which was authenticated in the manner required by the statute with the name of all of the judges and clerks "written across the fold of the envelope" was not a valid return and could not be treated as such within the meaning of the statute, and should be rejected by the board.

The object of this provision of the statute, was to require the judges, or any one of the judges, who refused to sign the returns of the result of an election, to adopt the alternative course, as prescribed by the statute, of making a written statement, showing his reasons therefor, and this return should be returned with the others.

It is clear, we think, that the refusal of the two judges and clerk, to sign the usual return in this case could not be held to invalidate these returns in view of the return made by the judges so refusing, as required by the statute.

This statute distinctly provides for this alternative return, and it nowhere provides that the failure of less than a majority of the judges to sign, shall have the effect of invalidating the returns. In *Carr* v. *Hyattsville,* 115 Md. 549, this Court said: "If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all Courts must so hold * * *. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time, or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election * * *. In general, those statutory provisions which * * * relate to the mode of procedure in the election and to the record and return of the results are formal and directory. Statutory provisions relating to elections are not mandatory as to the people by the circumstance that the officers of the

election are subjected to a criminal liability for their violation, etc., etc." *Coulehan* v. *While,* 95 Md. 716.

The Canvassing Board in this case, not only refused to canvass the returns because they were not signed by the two judges and one clerk, but they rejected the returns altogether, and declared they were not in conformity with law, but were illegal and invalid.

It has been repeatedly held,, that the duties of canvassing officers are purely ministerial and under the facts of this case, the canvassers could only canvass and declare the result as shown by the returns.

In *Morgan* v. *Quackenbush,* 22 Barber, 77, it was said, "the canvassers are not at liberty to receive evidence of anything outside of the returns themselves, their duty consists in a simple matter of arithmetic." In *People* v. *Head,* 25 Ill. 328, it is said, "they may probably judge whether the returns are in due form, but after that, they only compute the votes cast for the several candidates and declare the result." In *Atty. General* v. *Barstow,* 4 Wisconsin, 749, the Court held, that "canvassing officers are to add up, and certify by calculation the number of votes given for any office; they have no discretion to hear, and take proof, as to frauds even if morally certain that fraud were perpetrated."

Mr. McCrary, in his work on the *Law of Elections,* in treating of the power and duties of election officers, reviews a large number of cases, and concludes, that the doctrine, "that canvassing boards, and return judges, are ministerial officers, possessing no discretionary or judicial power, is settled in nearly all, if not quite all the states, and in determining as to the form of the returns they must consider the substance and not be too technical. If there is a substantial compliance with the law it is enough." *McCrary on Elections,* section 263, 264.

Under section 85 of Article 33 of the Code, the canvassing board in this State, has the power to recall the judges of election, and the clerks, and in case of mistakes, omissions, etc., to have them corrected and the canvass to be correctly stated, as provided by the statute.

Every sound principle of legal construction, we think, requires us to hold that the canvassing board in this case, had no sufficient reason to justify them in refusing to canvass, and to reject the returns as made, and as was done in this case. Any other construction would lead to endless contests and controversies. It would open the door and put in the power of the judges of election to throw out the returns from any election district, defeat the will of the majority and secure the certificate of election for a candidate who had not received a majority of the votes in the county. The Legislature never could have intended to confer such a power as this upon the judges and clerks of an election.

The Senate of Maryland, itself, under section 19, Article 3, of the Constitution, is the tribunal which has the sole power to decide and judge of the qualifications of its members, to the exclusion of every other tribunal. It is made the final and exclusive judge of all questions whether of law or of fact respecting such election returns or qualifications. so far or as they are involved in the determination of the right of any person to be a member thereof. We express no opinion, and disclaim all intention to investigate the question of the title to the office of senator in this case. *Covington* v. *Buffett,* 90 Md. 578.

For the reasons as stated we affirmed the order appealed from, and in a *per curiam* opinion filed on the 19th of December, 1913, said: "Under the facts appearing in the record in this case, a return having been made for the eighth election district of Worcester County of the election held in said district on the fourth day of November, 1913, over the signatures of two judges and one clerk, and the other judges and clerk having refused to sign the same and certified as a reason 'that there was illegal voting done,' this Court is of opinion that no sufficient cause was shown to justify the board of canvassers in refusing to canvass the return made. and that therefore the order of the Circuit Court for Worcester County appealed from must be affirmed."

*Order affirmed, with costs.*